**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREW ESTRADA,<br><br>        Petitioner,<br><br>    v.<br><br>R.H. TRIMBLE,<br><br>        Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:12-cv-02011-LJO-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN 21 DAYS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL HISTORY

Petitioner was convicted in 2011 of second degree murder and use of a firearm. (Clerk's Transcript ("CT") p. 177). He was sentenced by the Tulare county Superior court to an indeterminate sentence of 15 years-to-life plus 25 years-to-life. Id. Petitioner filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which affirmed the conviction. (Doc. 18, Ex. A). He filed a petition for review in the California Supreme Court that was summarily denied. (Lodged Document ("LD") 11).

///

///

1

1

**FACTUAL BACKGROUND**

2

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

3

Estrada and his cousin, Chris Navarro, hosted a party at their house in Farmersville on April 3,
2010, around 10:00 p.m. Estrada and many of the guests drank beer and smoked marijuana.

4

The victim, Aising Saesee, lived down the street and came to the party uninvited.

5

One of the party guests testified Saesee and Navarro were talking to one another as she was
leaving. A recording of Estrada's police interrogation was admitted into evidence and played

6

for the jury. When the police interrogated Estrada, he stated that Saesee told Navarro "he was
going to get his homies on us because [they had] marijuana plants," at which point Navarro

7

told Saesee to leave the party. Estrada also stated Saesee told them he was going to call his
"OT's," and that he was going to "spray" them because Estrada was wearing red.

8

Toward the end of the night Alex Aparicio (Alex) and his girlfriend were arguing in the front

9

yard. Saesee approached Alex to ask him for a cigarette and told them they shouldn't be
arguing. Later, Alex's girlfriend left the party, but he remained outside. At some point, Alex

10

tried to get back into the house, but the door was locked. He tried knocking on the door and
calling his friends in the house, but no one answered. Saesee also tried knocking on the door,

11

and Alex told him that no one was answering.

12

Meanwhile, Estrada, Navarro, Monique Hernandez, and Alex's brother Sergio Aparicio
(Sergio) were all inside the house. Sergio testified they heard somebody knocking, but soon

13

after it sounded like somebody was kicking the door. Estrada looked to see who was knocking.
He told the others that he did not know who it was and "maybe [the person knocking is] an OT

14

or something." After Estrada mentioned the person at the door might be an OT, everybody
started getting scared. Sergio and Navarro each called the police.

15

Estrada told police in the interrogation that he texted his friend Daniel Martinez, a Norteño

16

gang member, telling him that an OT was at the party and "getting crazy." Estrada also asked
Martinez to bring him a gun. Estrada met Martinez a block away from the house to pick up a

17

revolver. Then Estrada walked up the street in front of the house and yelled at Saesee. Alex
testified that at that point Saesee was across the street from the house and no longer knocking

18

on the door. Alex stated Estrada fired the gun once into the air. After the first shot, Alex hid
behind a pillar in front of the house.

19

Estrada told police he yelled at Saesee to get away from the house, at which point Saesee put

20

his hand in his pocket and walked away from the house. Estrada stated he felt scared as Saesee
put his hand in his pocket. Estrada fired one shot at Saesee and missed. Saesee turned and ran

21

from Estrada. Estrada told police he got close to Saesee, "shot him" and "emptied the clip on
him." Saesee fell to the ground after the second shot, and Estrada continued shooting him in

22

the back as he fell. Saesee died from five gunshot wounds to the back.

23

Estrada told investigators he shot Saesee because "he put a threat to my family.... He put a
threat to all of us and ... on my son.... He scared me really good. Cause I know how OT's

24

are...."

25

(Doc. 18, Exh. A, pp. 1-2).

26

27

_____

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1).

28

Thus, the Court adopts the factual recitations set forth by the 5th DCA.

**DISCUSSION**

I.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.    Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of  the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In <u>Harrington v. Richter</u>, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  <u>Harrington</u>, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings.  <u>Davis v. Woodford</u>, 384 F.3d at 637, citing <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Wiggins v. Smith</u>, 539 U.S. at 520; <u>Jeffries v. Wood</u>, 114 F.3d at 1500.  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists."  <u>Id.</u>; <u>see</u> <u>Taylor v. Maddox</u>, 366 F.3d 992, 999-1001 (9th Cir. 2004), <u>cert.denied</u>, <u>Maddox v. Taylor</u>, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 979, 803 (1991); <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."   <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993); <u>see also</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 119-120 (2007)(holding that the <u>Brecht</u> standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

4

Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

**III.  Review of Petitioner's Claims.**

The instant petition itself alleges a single claim for relief, i.e., that he was denied the effective assistance of trial counsel.

A.  Ineffective Assistance Of Trial Counsel.

Petitioner contends that trial counsel was ineffective for failing to request a jury instruction on antecedent threats.  This contention is without merit.

1.  The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

Estrada asserts he was provided with ineffective assistance of counsel when his trial counsel failed to request a jury instruction on antecedent threats. We disagree.

The defendant has the burden of proving ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of trial counsel, the defendant must establish not only deficient performance, which is performance below an objective standard of reasonableness, but also prejudice. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Tactical errors are generally not deemed reversible. Counsel's decision making is evaluated in the context of the available facts. To the extent the record fails to disclose why counsel acted or failed to act in the manner challenged, appellate courts will affirm the judgment unless counsel was asked for an explanation and failed to provide one, or, unless there simply could be no satisfactory explanation. Prejudice must be affirmatively proved. The record must affirmatively demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (People v. Maury (2003) 30 Cal.4th 342, 389.) Attorneys are not expected to engage in tactics or to file motions which are futile. (Id. at p. 390; also see People v. Mendoza (2000) 24 Cal.4th 130, 166.)

Although a court has no duty to give on its own motion a pinpoint instruction on specific evidence developed at trial (People v. Michaels (2002) 28 Cal.4th 486, 529–530), it must give a requested instruction "if the instruction correctly states the law and relates to a material question upon which there is evidence substantial enough to merit consideration." (People v. Barajas (2004) 120 Cal.App.4th 787, 791.)

Estrada's trial counsel did not err by failing to request a pinpoint instruction on antecedent threats. Defense counsel's failure to request the instruction was an objectively reasonable tactical decision. Counsel explained in closing arguments, "Andrew had the [threat] fresh in his mind about Mr. Saesee and his homies coming back to the house, and here you have Mr. Saesee acting like a maniac at the door. It's reasonable that there was some fear involved." Counsel characterized the facts that way in an attempt to depict the earlier threats at the party

as present threats, still "fresh" in Estrada's mind.

Requesting a pinpoint instruction on antecedent threats may have confused the jury by depicting the conflict as multiple events, inconsistent with counsel's portrayal of a single ongoing incident. Counsel's illustration of events at the party served his argument that Estrada acted believing he was facing immediate harm. As so construed, Saesee's earlier threat that he would come back "with his homies" and "spray" them was not made in the distant past but is part of an immediate and ongoing threat as perceived by Estrada. Accordingly, counsel's failure to request the pinpoint instruction on antecedent threats was a reasonable tactical decision because counsel was emphasizing that Saesee's threats were current threats.

Furthermore, Estrada fails to establish trial counsel's supposed error was prejudicial. While Estrada argues the absence of the antecedent threats instruction led the jury to believe that only threats that immediately precede the homicide may be considered (People v. Pena (1984) 151 Cal.App.3d 462, 475 (Pena)), he ignores the language of other instructions given to the jury. The trial court instructed the jury on imperfect self-defense based on CALCRIM No. 571. The trial court stated, in relevant part:

> "The defendant acted in imperfect self-defense or imperfect defense of another if:

>> "1. The defendant actually believed that he or someone else was in imminent danger of being killed or suffering great bodily injury; AND

>> "2. The defendant actually believed that the immediate use of deadly force was necessary to defend against the danger; BUT

>> "3. At least one of those beliefs was unreasonable.

>> "Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be.

>> "In evaluating the defendant's beliefs, consider all the circumstances as they were known and appeared to the defendant.

>> "Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm.

>> "The People have the burden of proving beyond a reasonable doubt that the defendant was not acting in imperfect self-defense or imperfect defense of another. If the People have not met this burden, you must find the defendant not guilty of murder."

The jury was instructed to "consider all the circumstances as they were known and appeared to the defendant." The jury weighed all the circumstances, including Saesee's threats against Navarro and Estrada, and still concluded Estrada was not acting in defense of himself or others. Thus, the jury was correctly instructed on the issue of how to weigh evidence of the threats by the victim and how they potentially influenced Estrada's conduct. The additional antecedent threats instruction adds little to the instructions given to the jury. It is not reasonably probable, therefore, that Estrada would have received a more favorable result if his trial counsel had requested a pinpoint instruction on antecedent threats.

In sum, "[i]t is unlikely the jury hearing the evidence, the instructions given and the argument of counsel would have failed to give the defendant's position full consideration." (People v. Gonzales (1992) 8 Cal.App.4th 1658, 1665 (Gonzales).)  Put another way, given the state of

6

the evidence against defendant, we conclude there is no reasonable probability of a more favorable result had appellant's trial counsel prepared and requested a pinpoint instruction on antecedent threats. (See People v. Weaver (2001) 26 Cal.4th 876, 925; People v. Castillo (1997) 16 Cal.4th 1009, 1014–1015.)

Although Estrada relies on Pena, we find the rationale of Pena is based on facts different from the instant action. In Pena, the court found the pinpoint instruction on antecedent threats was warranted because the victim's threats against the defendant occurred prior to the date of the charged offense. (Pena, supra, 151 Cal.App.3d at pp. 476–477.)  It was reasonable that the jury there would not account for prior threats against the defendant, absent a pinpoint instruction, because the threats were made days before the incident.

Cases finding that the antecedent threat instruction should have been given have been in situations where the threat occurs some time, usually a day or more, in advance. (People v. Moore (1954) 43 Cal.2d 517, 528–529 [decedent attacked and beat defendant on many prior occasions]; Pena, supra, 151 Cal.App.3d at pp. 476–477 [threats to defendant by victim occurred prior to date of charged offense of murder]; Gonzales, supra, 8 Cal.App.4th at p. 1660 [antecedent threats occurred three days prior to charged offense of attempted murder].)  In contrast, Saesee's threats occurred close in time and space to when and where he was killed. It is highly probable the jury included them in "all the circumstances" when determining whether Estrada acted in self-defense.

Estrada has not cited, and we find no authority, supporting the use of a pinpoint antecedent threats instruction where the threats occurred shortly before the commission of the alleged crime. The failure to request a pinpoint instruction on antecedent threats did not prejudice Estrada and he was not denied effective assistance of counsel.

(Doc. 18, Ex. A, pp. 2-4).

> 2.  Federal Standard.

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland 's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, Petitioner must establish he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he

would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance.  Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009).  Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007)..  In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable.  Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Here, the state court identified and applied the appropriate federal standard, i.e., Strickland.[2] Thus, the only issue is whether the state court's adjudication, i.e., that defense counsel's representation was neither deficient nor prejudicial, was not contrary to or an unreasonable application of Strickland. For the reasons discussed below, the Court concludes that it was not.

3. Analysis.

In this case, the state court declined to find deficient conduct by trial counsel because, in the state court's view, counsel's decision not to request an instruction on antecedent threats was a tactical one.  As the 5th DCA noted, the defense strategy was to characterize the events presented at trial as a

---

[2]The 5th DCA cited Williams v. Maury, 30 Cal.4th 342 (2003), which, in turn, refers to Strickland. Maury, 30 Cal.4th at 416.

single continuous and ongoing incident rather than a series of separate events.  This permitted defense counsel to argue that the threats made to Petitioner at the party were present threats that were still in Petitioner's mind and thus created an immediate sense of danger and harm.  A pinpoint instruction on antecedent threats would, as the court noted, have been inconsistent with this defense and risked confusing the jury by focusing the jury's attention on the separation, rather than proximity, in time between the threats and the crimes themselves.  Under this view, defense counsel's decision not to request a pinpoint instruction was a reasonable and sound strategy and therefore did not constitute ineffective assistance.  Hence, the state appellate court's decision not to second guess trial counsel's apparent tactical decision was not an unreasonable application of the standard set forth in Strickland. See Mancuso v. Olivarez, 292 F.3d 939, 954 (9th Cir.2002) ("We will not second-guess such decisions or use hindsight to reconstruct the circumstances of counsel's challenged conduct."); Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir.1983) ("A tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel.").

Regarding the prejudice prong of Strickland, the 5th DCA pointed out that the jury was instructed to consider all of the circumstances in evidence that "were known and appeared to the defendant" before finding whether Petitioner acted in imperfect self-defense or imperfect self-defense of another.  In the state court's view, the instructions properly instructed the jury in how to weigh the evidence of threats by the victim and how to assess their influence, if any, on Petitioner and his subsequent conduct.  It is well-settled that jurors are presumed to have followed the instructions. E.g., Weeks v. Angelone, 528 U.S. 225, 235, 120 S.Ct. 727 (2000).  After being so instructed, the jury rejected Petitioner's defense of self-defense or defense of another.  It is difficult to see how the addition of the pinpoint instruction on antecedent causes would have altered this result in any way. Accordingly, the state court's adjudication that trial counsel's failure to request such an instruction was not prejudicial under Strickland was objectively reasonable.  For these reasons, Petitioner's claim of ineffective assistance of trial counsel should be rejected and the petition denied.

## RECOMMENDATION

Accordingly, the Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus

1   (Doc. 1), be **DENIED**.

2   　　　　These findings and recommendations are submitted to the United States District Judge

3   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local

4   Rules of Practice for the United States District Court, Eastern District of California. **Within 21 days**

5   after being served with these findings and recommendations, Plaintiff may file written objections with

6   the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and

7   Recommendations." **Within 14 days thereafter**, Respondent may file a reply to the objections.

8   　　　Plaintiff is advised failure to file objections within the specified time may waive the right to

9   appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991); <u>Wilkerson v.

10   Wheeler</u>, 772 F.3d 834, 834 (9th Cir. 2014).

11

12   IT IS SO ORDERED.

13   　Dated:   **March 19, 2015**　　　　　　　　　　**/s/ Jennifer L. Thurston**

14   　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28